**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

---------------------------------------------------------------- x

MIKHAIL ZADORNOV,                                 :
     Str. Malaya Molchanovka, 8-29          :
     Moscow 121069                          :
                                            :
          Plaintiff,      :
                                            :     Case No. 24-CV-2239
     - against -                            :
                                            :
ANTONY J. BLINKEN,                                :     **COMPLAINT FOR**
     in his official capacity as            :     **DECLARATORY AND**
     Secretary of the United States         :     **INJUNCTIVE RELIEF**
     Department of State                    :
     2201 C St., NW                         :
     Washington, D.C. 20520                 :
                                            :
THE UNITED STATES                                 :
DEPARTMENT OF STATE,                              :
     2201 C St., NW                         :
     Washington, D.C. 20520                 :
                                            :
JIM MULLINAX,                                     :
     in his official capacity as            :
     Director of the                        :
     United States Department of State      :
     Bureau of Economic and Business Affairs :
     Office of Economic Sanctions Policy    :
     & Implementation                       :
     2201 C St., NW                         :
     Suite 4657                             :
     Washington, D.C. 20520                 :
                                            :
THE UNITED STATES DEPARTMENT OF                   :
STATE, OFFICE OF ECONOMIC                         :
SANCTIONS POLICY AND                             :
IMPLEMENTATION                                    :
     2201 C St., NW                         :
     Suite 4657                             :
     Washington, D.C. 20520                 :
                                            :

1

| | |
|---|---|
| JANET YELLEN, | : |
|     in her official capacity as | : |
|     Secretary of the United States | : |
|     Department of the Treasury | : |
|     1500 Pennsylvania Ave., NW | : |
|     Washington, D.C. 20220 | : |
| | : |
| THE UNITED STATES DEPARTMENT OF | : |
| THE TREASURY, | : |
|     1500 Pennsylvania Ave., NW | : |
|     Washington, D.C. 20220 | : |
| | : |
| BRADLEY SMITH, | : |
|     in his official capacity as | : |
|     Director of the | : |
|     United States Department of the Treasury | : |
|     Office of Foreign Assets Control | : |
|     1500 Pennsylvania Ave., NW-Annex | : |
|     Washington, D.C. 20220 | : |
| | : |
|     and | : |
| | : |
| THE UNITED STATES DEPARTMENT | : |
| OF THE TREASURY, OFFICE OF FOREIGN | : |
| ASSETS CONTROL, | : |
|     1500 Pennsylvania Ave., NW-Annex | : |
|     Washington, D.C. 20220 | : |
| | : |
|              Defendants. | : |

----------------------------------------------------------------- x

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff Mikhail Mikhailovich Zadornov (hereinafter, "Plaintiff" or "Mr. Zadornov")

brings this Complaint for Declaratory and Injunctive Relief against Defendants, the United

States Department of State (the "State Department"), its Secretary Antony J. Blinken, the

U.S. Department of State's Office of Economic Sanctions Policy and Implementation

("Office of Economic Sanctions Policy and Implementation"), its Director Jim Mullinax,

along with the U.S. Department of the Treasury, its Secretary Janet Yellen, the U.S.

Department of the Treasury's Office of Foreign Assets Control ("OFAC"), and OFAC's

Director Bradley T. Smith, (collectively, the "Defendants"), and in support of his Complaint alleges:

## **INTRODUCTION**

1.      This lawsuit arises from the Defendants' designation of Plaintiff as a Specially Designated National ("SDN") in violation of the U.S. Constitution insofar as Executive Order ("E.O.") 14024 of April 15, 2021 exceeded the powers delegated to the President by Congress, and Defendants' continued and unlawful failure to adjudicate Plaintiff's request to rescind his designation as an SDN and remove his name from the List of Specially Designated Nationals and Blocked Persons (the "SDN List").

2.      In this Complaint, Plaintiff asserts four claims.  First, OFAC has impermissibly and illegally delegated its authority to adjudicate delisting petitions to the State Department, which has no authority to adjudicate such applications, nor any process by which such petitions are evaluate.  Second, the Defendants have arbitrarily and capriciously treated Plaintiff differently than similarly situated petitioners under the same administrative process. Third, Defendants are unreasonably delaying adjudication of Plaintiff's petition for removal from the SDN List in violation of the APA.  Lastly, there is no factual basis upon which Defendants could reasonably determine that Plaintiff should remain on the SDN List.

3.      On February 24, 2024, President Joseph R. Biden stated that "The Russian military has begun a brutal assault on the people of Ukraine without provocation, without justification, without necessity" and announced sanctions designed to "impose severe costs on the Russian economy, both immediately and over time. [designed to] maximize the long-term impact on Russia and to minimize the impact on the United States and our Allies."  In imposing these sanctions, President Biden declared a national security emergency and

3

invoked the powers delegated to the President by Congress in the International Emergency Economic Powers Act ("IEEPA") to impose sweeping sanctions on Russian individuals and entities.

4.      Bank Otkritie Financial Corporation ("Bank Otkritie") was placed on the SDN List by Defendant Department of State on February 24, 2022.  Subsequently, on April 20, 2022, Defendant Department of State placed the board members identified in its last public filing before February 24, 2022, including Plaintiff, on the SDN List.

5.      Plaintiff petitioned for reconsideration of his designation on December 21, 2023, including a copy of the bank's order on the termination of his employment (dated December 26, 2022 and effective December 31, 2022), along with copies of news articles that reported his resignation.

6.      Mr. Zadornov, a career professional in the banking industry, has spent a large part of his career working with prominent private institutions in Russia.  He is an economist who served in President Boris Yeltsin's administration and contributed to the transition of the Russian economy from communism to a free market system.  He has no current ties to the Russian government, has no sway with the current regime, and is neither a U.S. adversary nor a national security or foreign policy risk.  As such, his designation does nothing to affect U.S. foreign policy or deal with the ongoing national security crisis and accomplishes nothing beyond making him collateral damage in the conflict.

7.      OFAC's stated policy of imposing sanctions is "not to punish, but to bring about a positive change in behavior."  Here, the sole basis for designating Plaintiff was his position at Bank Otkritie.  If Plaintiff cannot be removed from the SDN List based on his resignation from Bank Otkritie, then there is effectively nothing he can do to end his status as

4

a sanctioned individual because he has already terminated the sole basis for his designation. Moreover, keeping Plaintiff on the SDN List sends a message that the U.S. assigns no value to course correction.

8.    Defendants' unreasonably delay in adjudicating Plaintiff's delisting application violates their obligation to afford Plaintiff due process and equal protection under the law. When the Defendants designated Plaintiff, certain legal protections attached to Defendants' actions under the Administrative Procedure Act (the "APA") and the U.S. Constitution. Defendants may not act arbitrarily and capriciously through the adjudication process or otherwise act in a manner contrary to the law.  Defendants may not deprive those affected by their actions of due process and equal protection, including a meaningful opportunity to respond to government action and equal treatment to those similarly situated.  In unnecessarily delaying adjudication of his delisting petition, Defendants have deprived Plaintiff of his rights to equal protection and due process under the U.S. Constitution.

9.    Further, Defendant OFAC has violated the law by outsourcing Plaintiff's delisting application to Defendants the Department of State and the Office of Economic Sanctions Policy and Implementation, which do not have their own set of regulations providing a process or procedures for parties sanctioned by these Defendants—as Plaintiff is—for seeking a recission of their E.O. 14024 designation.  Instead, Defendants the Department of State and Office of Economic Sanctions Implementation and Policy purport to act under 31 C.F.R. § 501.807—Defendant OFAC's regulatory procedures for removal from the SDN List.

10.    However, there is no delegation of authority for the Department of State or the Office of Economic Sanctions Policy and Implementation to administer the delisting

5

procedures contained in 31 C.F.R. § 501.807. Furthermore, although E.O. 14024 expressly provides that the Secretary of the Treasury may redelegate her authorities solely within the Department of the Treasury, it does not provide such authority to delegate with respect to any other Cabinet-level Department. Finally, 31 C.F.R. § 501.807 expressly states that it is Defendant OFAC that will review and adjudicate petitions for removal from the SDN List, not any other federal agency.

11.    Furthermore, Defendants failure to remove Plaintiff from the SDN List has been arbitrary and capricious insofar as there is a clear precedent of OFAC delisting parties who resigned from the positions underlying the basis of their designations. Under the binding precedents of this Court, Defendants are required to treat similarly situated parties similarly pursuant to the same administrative process. Defendants must then adjudicate Plaintiff's matter in a similar manner as it did those other petitioners' or, at a minimum, provide some explanation as to why Plaintiff has been treated differently.

12.    OFAC has delisted numerous other similarly situated individuals and entities designated as SDNs under E.O. 14024. Plaintiff is aware of at least four of his former colleagues from Bank Otkritie who were removed from the SDN List, and of three other similarly situated former senior bank board members who were designated onto the SDN List and were subsequently delisted after they resigned their positions and filed petitions for removal with OFAC.

13.    To date, Defendants have provided no substantive response to Plaintiff's numerous requests for timely adjudication, despite Plaintiff's full cooperation. Indeed, despite OFAC's stated policy of issuing a questionnaire within 90 days of a submission of a delisting application, Plaintiff did not receive a questionnaire until May 15, 2024, nearly five

6

months after submission of his petition.  Despite the fact that this questionnaire called for information that was both irrelevant and unnecessary to Defendants' determination of his delisting petition and appeared to be a transparent attempt to either delay a determination or a fishing expedition for information that may warrant designation on other grounds, Plaintiff swiftly responded in nine days.

14.     The Defendants' delay in adjudicating Plaintiff's petition for reconsideration stands in stark contrast to the simplicity of the question before them.  It has now been over seven months since Plaintiff submitted his petition for reconsideration which presented Defendants with conclusive evidence that Plaintiff resigned from his position at Bank Otkritie subsequent to his designation. This documentary evidence supports the argument that keeping him on the SDN List is unwarranted and constitutes arbitrary and capricious action.   There is an irrefutable record that Plaintiff no longer serves in *any* capacity for Bank Otkritie, thus negating the predicate basis for his designation by State.  Nevertheless, Defendants have clearly failed to adjudicate his petition for removal, which constitutes an unreasonable delay in violation of the APA.

15.     Defendants' failure to adjudicate Plaintiff's petition – which, in effect, amounts to a decision to deny the petition – has caused, and continues to cause, Plaintiff significant personal and financial harm.  As a result of Defendants' arbitrary and capricious actions, Plaintiff is limited in engaging with any Western and arguably most non-Russian financial institutions and cannot engage in any meaningful professional practice due to his current status.  For example, Plaintiff is currently unable to freely attend professional conferences or engage in lectures in other countries as he did frequently in the past. Additionally, Plaintiff is suffering reputation harm as a result of his designation, which is

7

hindering his ability to find work as a consultant or as an independent member of supervisory boards in private companies, even within Russia, despite his high, international profile. Plaintiff will continue to suffer those harms so long as Defendants' unreasonable delay in adjudicating Plaintiff's delisting petition is allowed to continue.  Accordingly, Plaintiff brings this action to remedy the wrongs that Defendants have imposed upon him.

## JURISDICTION AND VENUE

16.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 555 and 701 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

17.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57.  This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

18.     Venue is proper in the District of Columbia as this is the district in which the events giving rise to the Complaint occurred and in which Defendants reside.  *See* 28 U.S.C. §§ 1391(b) and (e).

## THE PARTIES

19.     Mr. Zadornov, a citizen of Russia, was the CEO and President of Bank Otkritie from 2017 to 2022.  He holds a Ph.D. in Economics and was formerly Minister of Finance in Russia during the presidency of Boris Yeltsin. In December 2017, he was appointed as CEO and President of Bank Otkritie, assuming his duties in January 2018.  The independent

directors were invited to this Board to help prepare the bank for an intended disposal through an initial public offering (IPO) or sale to a strategic buyer.  Mr. Zadornov's previous career experience was directly relevant for this task, having been a prominent economist and former Minister of Finance, as well as a senior level bank executive.  On April 20, 2022, OFAC named Mr. Zadornov to the SDN List pursuant to E.O. 14024 for his role in Bank Otkritie.  His resignation became effective December 31, 2022.  He currently resides in Russia and does not hold any positions in the government or the financial sector of the Russian Federation.

20.    Defendant Department of State is a cabinet-level governmental department of the United States federal government that manages the United States' relationships with foreign governments, international organizations, and the people of other countries. The Department of State is located at 2201 C Street, NW, Washington, D.C. 20037. The Department of State is responsible for designating Plaintiff pursuant to E.O. 14024.

21.    Defendant Antony J. Blinken is the Secretary of the United States Department of State.  Secretary Blinken is sued in his official capacity.

22.    Defendant the Office of Economic Sanctions Policy and Implementation is a federal agency within the United States Department of State's Bureau of Economic and Business Affairs.  The Office of Economic Sanctions Policy and Implementation has purported to process Plaintiff's Petition for Removal.  The Office of Economic Sanctions Policy and Implementation is located at 2201 C Street, NW, Suite 4657, Washington, D.C. 20520.

23.    Defendant Jim Mullinax is the Director of the Office of Economic Sanctions Policy and Implementation.  Mr. Mullinax is sued in his official capacity.

9

24. Defendant the U.S. Department of the Treasury, is a cabinet-level governmental department, led by the Secretary of the Treasury. It is located at 1500 Pennsylvania Ave., NW Washington, D.C. 20220. Defendant the U.S. Department of the Treasury is responsible for maintaining the financial and economic security of the United States. It is also responsible for overseeing various offices, including OFAC.

25. Defendant Janet Yellen is the Secretary of the Treasury of the United States. Secretary Yellen is sued in her official capacity.

26. Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Washington D.C. 20220. Plaintiff understands that OFAC is lawfully responsible for administering U.S. economic sanctions programs, including by designating persons under E.O. 14024 and regulating dealings with them under those authorities—along with serving as the sole administrative agency responsible for the reconsideration and delisting process—via 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures and Penalties Regulations" and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively.

27. Defendant Bradley Smith is the Director of OFAC. Director Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

**A.     Plaintiff's History and Background**

28. Mr. Zadornov is a Russian citizen who spent the first two decades of his career in the Russian public sector. In the late 1980s and 1990s, he engaged in substantial economic research and contributed his expertise to developing his country's policies and approaches

10

focused on transitioning the Soviet Union into a free market economy.  He received his Ph.D. in Economics from the Institute of Economics of the Academy of Science of the former Soviet Union. In 1991, he completed a month-long fellowship at Harvard University on "Agreement to the Chance," a program of transformation of the Soviet economy with the support of US and G-7 countries, led by famed economists Stanley Fischer, Jeffrey Sachs, David Lipton, and others, with the findings later presented to Presidents George H.W. Bush and Mikhail Gorbachev.

29.    Later, he joined the Yabloko political party, which is an opposition party to Vladimir Putin's government and has actively condemned Russia's actions in Ukraine and protested the war.  In the second half of the 1990's and early 2000's, Plaintiff served as a member of the four first terms of the new State Duma Federal Assembly of the Russian Federation and held the position of Finance Minister in President Boris Yeltsin's cabinet from November 1997 to May 1999.  As a Member of Parliament and chairman of the budgetary committee, he presided over almost all pro-free market legislation that was passed in Russia in the 1990s.

30.    Plaintiff was never part of President Vladimir Putin's administration that came into power in 2000, and he left politics completely by 2005.  Since then, Mr. Zadornov has been operating in the private sector of the Russian economy as an executive professional.  He held the position of the CEO and President of VTB 24, the retail banking arm of VTB Group, until late 2017 when he left to join Bank Otkritie. When joining Bank Otkritie, Mr. Zadornov did not expect Bank of Russia's takeover of Bank Otkritie to be permanent and expected that an initial public offering (IPO) would soon take place as the financial situation of the Bank improved.

31.     On February 24, 2022, OFAC imposed blocking sanctions on Bank Otkritie. However, Mr. Zadornov could not resign immediately as he was bound by a five-year contract with Bank Otkritie and wanted to complete the wind-down of affairs involving the bank and the interests of the bank's clients, as well as wind-down with foreign and other financial institutions, including many in the West.

32.     Mr. Zadornov submitted his resignation on December 26, 2022, which became effective on December 31, 2022.  Since he resigned his position, he has not held and does not plan to hold any executive positions in the Russian financial services sector.

**B.     The Origins of IEEPA and the Executive's Constitutional and Statutory Authority**

33.     The International Emergency Economic Powers Act ("IEEPA") specifies its general policy and purpose – "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President [of the United States] declares a national emergency with respect to such threat."  50 U.S.C. § 1701(a).

34.     OFAC, the federal agency tasked with administering the U.S. sanctions regimes, has provided guidance stating that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." See https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list. The guidance also offers examples of situations in which a delisting might be warranted, including "a positive change in behavior…" or when "the basis of designation no longer exists…" Id.  OFAC's own regulations further allow SDNs to "assert that the circumstances resulting in the designation no longer apply, and to […]

propose remedial measures […] which the person believes would negate the basis for designation." 31 C.F.R. § 501.807.

35.     The rules governing the delisting process identify OFAC as the sole administrative body that adjudicates such petitions.  As stated in 31 C.F.R. § 501.807, "[a] person may seek administrative reconsideration of his, her or its designation … [t]his submission must be made in writing and addressed to the Director, Office of Foreign Assets Control." Thus, the entire authority to adjudicate a delisting petition rests with OFAC, and there is no mechanism for OFAC to delegate its entire function in this regard to any other federal agency, including the State Department.

36.     Notably, and as previously described, there is no mention of involvement of the U.S. Department of State in these procedures.  *See* 31 C.F.R. § 501.807, Procedures Governing Delisting from the Specially Designated Nationals and Blocked Persons List. Neither E.O. 14024 nor the underlying regulations at 31 C.F.R. Parts 501 and 587 provide the State Department with any legal authority to adjudicate a petition for reconsideration of a designation action.  Further, the State Department has not promulgated any regulations regarding the adjudication of administrative petitions for reconsideration.

37.     Although the State Department has the authority to designate individuals and entities pursuant to E.O. 14024 at Section 1(a), neither E.O. 14024 nor the underlying regulations confer upon the State Department any authority with respect to the administration of those sanctions, including but not limited to license applications or delisting petitions. E.O. 14024 states that "[t]he Secretary of the Treasury, in consultation with the Secretary of State is hereby authorized to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA, as may be

13

necessary to carry out the purposes of this order [E.O. 14024]." E.O. 14024 at Section 8. This means that the State Department's role is limited to consultation and does not extend to an administrative or adjudicative role. Further, E.O. 14024 states that "[t]he Secretary of the Treasury may, consistent with applicable law, redelegate any of the functions within the Department of the Treasury." E.O. 14024 at Section 8. As a result, there is no legal mechanism for OFAC to delegate its administrative and adjudicative role to the State Department, and the State Department has no legal authority to adjudicate Plaintiff's petition for reconsideration.

38.    Even though the Department of State has no regulatory framework for considering the delisting of sanctioned individuals and entities, it, too, follows the same principle, stating on its website that "The Office of Economic Sanctions Policy and Implementation … maintains and enforces sanctions to maximize their economic impact on our targets and minimize the damage to U.S. economic interests. We also work to remove economic sanctions when appropriate to reward and incentivize improved behavior or demonstrate U.S. support for newly established democratic governments[.]" See https://www.state.gov/economic-sanctions-policy-and-implementation/.

39.    OFAC has frequently and publicly claimed that the imposition of sanctions is not to punish for past behavior but rather to cause a change in behavior. Defendants' actions, especially with regards to Plaintiff, demonstrate that although the stated purpose of sanctions is consistent with the IEEPA and the U.S. Constitution, their actions are not. By needlessly delaying removal of Plaintiff from the SDN List, Defendants have arbitrarily and capriciously failed to recognize Plaintiff's change in behavior while simultaneously delisting similarly situated individuals.

14

**C.      U.S. Sanctions on the Russian Financial Sector**

40.      On February 24, 2022, Russia invaded Ukraine.  In response, the United States and its allies imposed sanctions on scores of Russian individuals and entities.  The stated purpose of these sanctions was to bring about the end of hostilities.  Many of these sanctions were directed at Russian state-owned financial institutions – as President Biden stated in his remarks in Warsaw, Poland on March 26, 2022, "Russia's Central Bank is now blocked from the global financial systems, denying Kremlin's access to the war fund it stashed around the globe."

41.      On February 24, 2022, Public Joint Stock Company Bank Financial Corporation Otkritie and its subsidiaries were designated pursuant to E.O. 14024.  87 Fed. Reg. 11828.   The OFAC Press Release on February 24, 2022 stated, "The U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) today imposed expansive economic measures […] that target the core infrastructure of the Russian financial system – including all of Russia's largest financial institutions and the ability of state-owned and private enterprises to raise capital – and further bars Russia from the global financial system."  With respect to Bank Otkritie's designation, the OFAC press release stated, "Public Joint Stock Company Bank Financial Corporation Otkritie (Otkritie) is deemed by the GoR to be a systemically important Russian state-owned credit institution and is Russia's seventh largest financial institution. Otkritie was designated pursuant to E.O. 14024 for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, the GoR, and for operating or having operated in the financial services sector of the Russian Federation economy."

42.     On April 20, 2022, Plaintiff was designated for being or having been a leader, official, senior executive officer, or member of a board of directors, or member of an entity whose property and interest in property are blocked under E.O. 14024. Based on the factual allegations in the government's press release, Section 1(a)(iii)(C) was specifically cited as providing legal authority for its action. In the press release, Secretary Blinken stated that, "We will continue to target those who take part in or facilitate sanctions evasion for sanctioned Russian entities, as they are complicit in President Putin's brutal war." Therefore, the logic of sanctioning board members of financial institutions was to punish their ongoing involvement in the activities of sanctioned financial institutions that aided the Russian government. Secretary Blinken said nothing about former board members who were no longer associated with such financial institutions.

43.     Where the sole basis for designation is acting as a board member of a sanctioned entity, there is no logic or reason in designating that individual if he or she has already resigned from the position because the designation does not deal with or impact in any way the ongoing national security crisis. Even the designations under E.O. 14024 reflect this underlying principle. Indeed, some of Bank Otkritie's board members who retired in December 2021 were not among the individuals that were sanctioned on April 20, 2022 for being board members of Bank Otkritie. By contrast, each of the individuals listed along with Plaintiff in the April 20, 2022 designations were the board members of Bank Otkritie in the bank's most recent public disclosure and the active board at the time of Russia's invasion of Ukraine.

44.     Plaintiff is also aware of four individuals, his former colleagues from Bank Otkritie, who were removed from the SDN List, and of three other similarly situated former

senior bank board members who were designated onto the SDN List and were subsequently delisted after they resigned their positions and filed petitions for removal with OFAC.

45.     Specifically, Mr. Zadornov's former Bank Otkritie colleagues Anatoly Karachinsky, Elena Titova, Andrey Golikov, and Paul Goldfinch—all former supervisory members of Bank Otkritie who resigned from their positions—have been removed from the SDN List.  Moreover, in the time since Plaintiff was designated, at least four other board members at sanctioned Russian banks – Alexey Fisun, Joel Lautier, Natalya Alymova, and Alexey Panferov – had their petitions adjudicated and were removed from the SDN List. Notably, those parties were all designated under E.O. 14024, just as Plaintiff, and likewise petitioned for reconsideration based on the fact that they had resigned from their board positions, regardless of whether they resigned before or after their designation.

46.     Accordingly, the State Department and OFAC's own actions evidenced an intent to continue sanctioning current board members, not ones who have resigned.

**D.     Plaintiff's Challenge to His Designation**

47.     On December 21, 2023, Plaintiff, through counsel, submitted a petition for reconsideration to OFAC.  In his petition, Plaintiff included a copy of his resignation letter, dated December 27, 2022 and third-party confirmations, including news articles announcing his resignation from the Bank Otkritie.  This was sent via email to Director Smith's attention at OFAC.Reconsideration@treasury.gov and separately to the Defendant Office of Economics Sanctions Policy and Implementation at sanctions_inbox@state.gov, based on

undersigned counsel's previous experience representing former members of the Bank Otkritie Board.

48.     Plaintiff received an acknowledgment of his petition from OFAC on December 22, 2023, which stated that the agency had opened a case, RUSSIA-EO14024-37036, in response.  The email acknowledgment stated, "Your request is under review.  However, the review process can be lengthy, and it is likely that State will seek additional information from your client before a final determination is made…"  According to OFAC's website, the agency states that, "If needed, OFAC typically endeavors to send the first questionnaire within 90 days from the date the petition is received by OFAC."  Notably, the e-mail also stated "This designation was effected under a Department of State authority. Sanctions_inbox@state.gov will serve as the initial point of contact for the petitioner during the reconsideration process, although they may refer you to a different bureau within the Department of State depending on case specifics."

49.     On January 8, 2024, the U.S. Department of State sent a separate follow-up confirmation of receipt.

50.     On February 5, 2024, Plaintiff's counsel responded to that confirmation email and noted that the 90-day period from the submission of the removal petition was approaching its end.  The next day, Office of Economic Sanctions Policy and Implementation responded that the agency "Please know that your client's request is currently under review…. We are working diligently to reach a decision… We will let you know if we have further questions or when we complete our adjudication."

51.     On March 1, 2024, Plaintiff's counsel emailed the Office of Economic Sanctions Policy and Implementation again, noting that the 90-day period is approaching its

18

end.  The same day, the agency responded with the exactly the same response as in the previous follow-up, "Please know that your client's request is currently under review…. We are working diligently to reach a decision… We will let you know if we have further questions or when we complete our adjudication."  The Office of Economic Sanctions Policy and Implementation did not provide any evidence that anyone at the agency had actually read Plaintiff's petition.

52.     On March 26, 2024, Plaintiff's counsel emailed Office of Economic Sanctions Policy and Implementation again and noted that the 90-day period expired the previous Wednesday and that Plaintiff had yet to receive a questionnaire from the agency.  The same day, OFAC responded that, "Please know that your client's request is currently under review. We are working diligently to reach a decision concerning Case ID: RUSSIA-EO14024-37036."

53.     On April 22, 2024, 123 days after Plaintiff submitted his petition, Plaintiff had still not received a questionnaire or a determination on his petition.  In fact, other than claiming without any evidence that it was "diligently" reviewing Plaintiff's petition, OFAC had not corresponded with Plaintiff or his counsel at all.  That day, Plaintiff's counsel emailed a letter addressed to OFAC, advising that Plaintiff would file suit if he did not receive any response to his petition by June 1, 2024.  Plaintiff received a response from Office of Economic Sanctions Policy and Implementation on April 25, 2024, stating that "We are in receipt of the information you attached. Please know that your client's request is currently under review, and we are working diligently to reach a decision concerning [your case]."

54.     Throughout these communications with the State Department, OFAC was consistently copied on the correspondence. Yet, at no time did any member of OFAC, the agency statutorily responsible for adjudicating petitions for delisting, assert any opinion or authority, remaining silent throughout the entire process.

55.     On May 15, 2024, Plaintiff received a questionnaire from the U.S. Department of State.  This questionnaire asked for information, much of which Plaintiff has already provided in his delisting petition that was filed with OFAC and the Department of State. Nonetheless, Plaintiff promptly responded to all questions in great detail and provided all requested documentation on May 24, 2024, only nine days later.  The Department of State confirmed receipt of his responses to their questionnaire on May 28. 2024.

56.     Plaintiff has now been designated for over two years, having resigned nearly 600 days ago.  Similarly situated petitioners have received adjudication and removal from the SDN List in as little as 35 days, even though, under binding case law in this Circuit, agencies must treat similarly situated parties similarly, unless they can provide a legitimate reason as to why they are being treated differently.  *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005) (quoting *Indep. Petroleum Ass'n of Am. V. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996)).

57.     There is nothing further that Plaintiff can do to demonstrate "improved behavior" when the basis of his designation is no longer operative.  Plaintiff has done everything that Defendants have requested, including promptly answering the questionnaire that demanded information irrelevant and inconsequential to the underlying basis for designation.  He has patiently waited for OFAC and/or the Department of State to provide

some kind of substantive response and has stood ready to provide any additional information that the agency may require to make a determination on his delisting petition.

58.     Plaintiff has no other recourse than to request this Court for declaratory and injunctive relief to address Defendants' unconstitutional and unlawful designation, as well as to prompt agency action to remedy the "pocket veto" that Defendants have employed in delaying adjudication of Plaintiff's petition to be removed from the SDN List.  A delayed adjudication is virtually indistinguishable from punishment, directly contravening OFAC's own policy set forth on its website.

## LEGAL CLAIMS

### COUNT I

**DEFENDANTS' ADJUDICATION OF PLAINTIFF'S PETITION FOR REMOVAL LACKS LEGAL AUTHORITY AND CONSTITUTES AGENCY ACTION THAT IS IN EXCESS OF STATUTORY AUTHORITY, WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW, OR OTHERWISE NOT IN ACCORDANCE WITH LAW IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

59.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

60.     The APA empowers a reviewing court to set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law.  5 U.S.C. § 706(2).

61.     Under the APA, "agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 706(1) and 5 U.S.C. § 551(13).

21

62.    Defendants the State Department, the Office of Sanctions Policy and Implementation, and the latter's director Jim Mullinax, are acting in excess of statutory authority, without legal authority, and without observance of procedure required by law, by adjudicating Plaintiff's petition for removal.

63.    The regulation—31 C.F.R. § 501.807—under which they purport to adjudicate that petition, requires Defendant OFAC and its Director, currently Bradley T. Smith, to adjudicate petitions for unblocking and removal from the SDN List.

64.    Defendants Department of State and the Office of Economic Sanctions Policy and Implementation also do not have a delegation of authority to administer and adjudicate petitions for removal from persons that they have sanctioned under E.O. 14024.  Nor may the Secretary of the Treasury redelegate such authority to Defendants Department of State and Office of Economic Sanctions Policy and Implementation as Section 8 of E.O. 14024 only authorizes the Secretary of the Treasury to "redelegate" her authority under E.O. 14024 "within the Department of the Treasury."  Exec. Order No. 14024, Sec. 8.  Any delegation of the functions for which E.O. 14024 provides authorization to the Secretary of the Treasury outside of the Department of the Treasury would be contrary to the express authorities and limitations set forth in E.O. 14024.

## COUNT II

**DEFENDANTS' TREATMENT OF PLAINTIFF'S PETITION FOR REMOVAL IS IN A MANNER DISPARATE TO SIMILARLY SITUATED PARTIES IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

65.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

22

66.     The APA empowers reviewing courts to set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law. 5 U.S.C. § 706(2).

67.     The APA defines "agency action" to include, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1); 5 U.S.C. § 551(13).

68.     Under binding precedent in this Circuit, administrative agencies must treat similarly situated parties similarly or, in the alternative, provide a legitimate reason as to why they are treating them differently.

69.     Defendants have treated at least seven other similarly situated petitioners who were designated pursuant to E.O. 14024 differently than Plaintiff by granting their petitions for removal because the predicate basis for designation no longer applied.  By contrast, Plaintiff has not received a determination on his petition despite Plaintiff having proved with documentary evidence that he resigned from Bank Otkritie over a year and a half ago. Specifically, Defendants had information regarding Plaintiff's resignation as soon as he submitted his petition for removal from the SDN List.

70.     Defendants' actions have resulted in an impermissible material difference in how Plaintiff's petition is being considered under the same regulatory process found at 31 C.F.R. § 501.807 when compared to such similarly situated petitioners.  Defendants have failed to provide a legitimate reason for treating Plaintiff, a similarly situated party, in a different manner under the same administrative process.  Thus, Defendants are denying Plaintiff equal protection under the law.

71. Further, Defendants are treating Plaintiff differently than similarly situated parties by failing to adjudicate this matter in a timely manner. Plaintiff will continue to suffer the consequences of his designation so long as Defendants continue to refuse to adjudicate Plaintiff's delisting petition and treat Plaintiff differently than similarly situated parties.

## COUNT III

### DEFENDANTS HAVE ARBITRARILY AND CAPRICIOUSLY DELEGATED RESPONSIBILITY FOR ADJUDICATING PLAINTIFF'S PETITION IN A MANNER THAT IS CONTRARY TO THE ADMINISTRATIVE PROCEDURE ACT AND RESULTING IN UNREASONABLE DELAY

72. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

73. The APA requires agencies to "conclude a matter presented to it…[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b). Under the APA, reviewing courts are required to compel agency actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

74. The APA defines "agency action" to include, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1); 5 U.S.C. § 551(13). Courts are required to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. §706(2)(A).

75. Defendants' failure to render a decision on Plaintiff's delisting petition for over seven months, despite having indisputable evidence in their possession that Plaintiff no

24

longer meets the legal criteria for designation under E.O. 14024 constitutes unreasonable delay under the APA.

## COUNT IV

### DEFENDANTS' FAILURE TO REMOVE PLAINTIFF FROM THE SDN LIST DESPITE THERE BEING NO FACTUAL BASIS FOR HIS CONTINUED DESIGNATION IS ARBITRARY AND CAPRICIOUS IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

76.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

77.    The APA empowers reviewing courts to set aside agency action that is, inter alia, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law. 5 U.S.C. § 706(2).

78.    The APA defines "agency action" to include, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1); 5 U.S.C. § 551(13).

79.    An agency action is arbitrary and capricious if it has relied on factors which the agency was not intended to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency.

80.    Defendants' failure to act on Plaintiff's delisting petition, despite having documentary evidence in their possession that Plaintiff no longer meets the criteria for designation under E.O. 14024, constitutes agency action that entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter

25

to the evidence before the agency, and therefore is arbitrary and capricious in violation of the APA.

## <u>RELIEF REQUESTED</u>

Wherefore, Plaintiff respectfully requests that this Court:

A.      Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and removal of his name from OFAC's SDN List;

B.      Order Defendants to issue a written decision on Plaintiff's pending delisting petition and/or provide a legitimate reason why his petition has been treated differently than those of similarly situated petitioners;

C.      Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access

to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

D.      Such other and further relief as the Court may deem proper.


Dated: July 30, 2024

<div style="margin-left:50%">

Respectfully submitted,

/s/ Farhad S. Alavi
Farhad Alavi
Akrivis Law Group PLLC
5335 Wisconsin Ave., Suite 440
Washington, D.C. 20015
Telephone: (202) 730-1271
Email: falavi@akrivislaw.com
D.C. Bar No. 500560

/s/ Amir H. Toossi
Amir H. Toossi
Akrivis Law Group PLLC
747 Third Ave., 32nd Floor
New York, NY 10022
Telephone: (646) 280-6370
Email: atoossi@akrivislaw.com
NY State Bar No. 4236071

*Counsel for Plaintiff Mikhail Zadornov*

</div>